Curia,per

Johnson, J.
The grounds of this motion may be resolved into the following propositions :
■' l. Whether parol evidence is admissible to that W. L. Smith was or was not a surety and not the principal debtor1? r A
2. Whether the evidence proved the fact ?
3. Whether the neglect on the part of Gibbes to take the mortgage, according to the terms of the sale, did discharge the surety %
4. Whether the contract entered into between James Smith, the holder of the bond, in 1794, and Campbell, for further time of payment, did not discharge the surety í
It is a matter of common notoriety, that contracts of this nature do not usually distinguish between the principal and the surety; and that it may and must be proved by parol is a conclusion which necessarily arises out of the numerous cases growing out of them, especially those where a recovery over is sought by the surety against the principal, and by the numerous rules of law which regulate their respective rights. And I take the principle to be, that the relationship which subsists between the joint obligors is a matter wholly extrinsic of the written contract, and may therefore be proved by parol, without any violation of the rule which prohibits *452 the introduction of parol evidence to contradict or vary a written agreement. /
Whether a party signed as surety or not may be inferred from the circumstances of the transaction.
The surety will be dis- 4 charged if the creditor releases any of the securities he may otherwise have for the payment of the debt. But when by the terms of a public sale a mortgage and personal security were required, the surety is not discharged if the vendor chose not to require the mortgage, at the consummation of the contract.
oTaitering'the t^ftD without the consent of discharges^ surety-A new con-
This rule h™cls of an weífas6*8 of^a^obii gee.
Mere for-not tochaTge pe surety.
A contract to surety, must bfndingonIS the creditor.
At common law the assignee of a bond could not sue jn jjjg own name. jje waS; therefore, compelled to sue in the name of the original obligee, and as a necessary consequence the defendant could have availed himself of all the equity which he had against the obligee. And the act of 1795, which makes these instruments assignable, expressly reserves that right to the obligor. The transfer of the bond to James Smith by Gibbes constituted him the unlimited agent of Gibbes in relation to them. He would therefore have been bound by any act which he might have done: so that the first of these arguments can not prevail.
The argument founded on a want of consideration to support the agreement assumes, on the authority of the case of Gibbes v. Chisolm, 2 Nott & M’Cord, 38, that without that agreement the interest which had accrued would be consolidated into principal, and carry interest; and that the payment of £20 could only be regarded as a payment pro tanto. In the case of King v. Baldwin, 2 Johns. Cha. Rep. 554, all the cases on this subject are collated by the masterly hand of Chancellor Kent, and from them it is clearly deducible, that if a creditor vary the terms of the agreement with the principal without the consent of the surety, the latter will be discharged. They proceed on the principle that the surety is entitled, on the payment of the debts himself, to be substituted to all the rights of the creditor by the terms of the original contract, which becomes impossible when they have been changed. And in the application of this rule numerous cases prove, that mere forbearance to call on the princi-pa] debtor for payment will not discharge the surety, for the obvious reason that the contract still remains the same. It follows then as a necessary consequence, that discharge the surety the agreement to vary the terms of the original contract must be such as to be binding on the creditor. Such an agreement must therefore *455 possess all the ingredients of a substantive independent original contract. But for the purposes of this case, it will not be necessary to enter upon the nature and extent of the consideration that would be required to support such an agreement. The prompt payment of £20 on each of the bonds, some of which were not then due, the agreement to consolidate the interest with the principal, and the reduction of the agreement to writing, constituted in any view of it a binding contract on James Smith, upon which both himself and defendant acted, and which both kept with good faith.
a deed can such chai'ge the surety,
It has been further insisted, that a contract by specialty can not be extinguished or abrogated by parol, and hence it is concluded that whatever might have been the terms of the new contract, Campbell’s lity on the bond was unimpaired, and that the transac-J 1 . tion only amounted to a forbearance to sue. This application of the rule appears to me to be too refined for practical purposes. When there are several contracts having the same object in view, that which furnishes the highest evidence of it is to be preferred for the most obvious reasons; and as no contract is obligatory which has not some consideration for its basis, such new contract without it would be void. But that the parties may, upon any new consideration, make any modification of an existing contract, and thereby extinguish it, is a legal conclusion which admits of no doubt. For these reasons the decree of the Circuit Court is affirmed, and the appeal dismissed.
Decree affirmed(1).

 See on this subject many authorities and most of the views, stated in the text and notes to Chitty on Bills, 371, last American Edition.